UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RICHARD REYNOLDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:22-CV-00016-SPM |
| ) | |
| BILL STANGE, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the amended petition of Missouri state prisoner Richard Reynolds ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 6). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 10). For the following reasons, the amended petition will be denied.

**I.   FACTUAL BACKGROUND**

The Missouri Court of Appeals summarized the facts of Petitioner's case as follows:

On the afternoon of July 30, 2012, Anthony Bobo and some friends were walking down Highland Avenue in the City of St. Louis, when one of Bobo's friends started exchanging gunfire with another group of young men. No one in Bobo's group was injured. However, two young men in the other group were shot: Alphonzia Williams, a.k.a. Lil' Chris, died; and Jackese Reynolds ([Petitioner's] brother) was shot in the arm.
On the night of July 30, 2012, Victim went to the home of her boyfriend, Anthony Bobo, one of the young men who was present on Highland Avenue during the shooting earlier that afternoon. Bobo and Victim borrowed Bobo's cousin Barbara Moore's car. As Bobo and Victim were driving the car on Highland Avenue to go to McDonald's, there was a group of young men near a stop sign trying to flag Bobo down and get him to stop. Bobo did not stop the car and continued driving. After Bobo and Victim were done eating, they drove the car back

1

to Highland Avenue and pulled over in front of a house on the street to pick up Moore.

Bobo testified the following then occurred. Victim called Moore to tell her to come outside. Subsequently, [Petitioner] (the brother of the Jackese Reynolds, the young man who was shot in the arm earlier in the day) and Deantez Strickland, a.k.a. "Bear" (a brother of Alphonzia Williams, the young man who was killed earlier in the day), came out of a nearby gangway. [Petitioner] then ran up to the car with a gun, pointed it at Bobo's head, and opened fire. Bobo then drove the car to the stop sign on Highland Avenue, and [Petitioner] and others shot towards the car. During the encounter, Victim was shot and later died as a result.

An examination of the car revealed a bullet hole in the windshield near the driver's side, a bullet hole in the passenger side of the vehicle, and a bullet hole in the driver's side near the rear door. Although Bobo was not initially forthcoming with the police because he was afraid of retribution for being a "snitch[ ] [,]" Bobo later identified three people as being involved in the shooting: [Petitioner], Deantez Strickland, and Dewayne Strickland (another brother of Deantez and Alphonzia Williams, the young man who was killed earlier in the day). . . .

The main defense witness was Barbara Moore, Bobo's cousin who let Bobo and Victim borrow her car on the night of the shooting involving Victim. Moore testified as follows. On the night Victim was killed, Moore was not outside when Bobo and Victim first pulled up to the house Moore was at on Highland Avenue. However, when Moore eventually came outside, she saw Deantez Strickland – who, according to Moore, was the only person who came out of the gangway – shoot towards Moore's car. Moore testified there was another male shooter, but she was not confident who the person was because she did not have a clear view of him. Two police officers also testified for [Petitioner]'s defense at trial. The officers collectively testified the police were unable to determine the caliber of bullet which struck and killed Victim, and police located no physical evidence inside of Moore's car.

Resp't Ex. E, at 4-5.[1]

On March 26, 2015, Petitioner was found guilty of murder in the first degree (Count I), armed criminal action (Count II), assault in the first degree (Count III), armed criminal action (Count IV), and unlawful use of a weapon resulting in injury or death (Count V). Resp't. Ex. A at 11, 146. On May 7, 2015, Reynolds was sentenced to life in prison without parole on Count I, ten

---

[1] This document contains multiple sets of page numbers. The Court refers to the pagination in the lower right-hand corner.
  Additional facts relevant to Petitioner's specific claims will be set forth in the discussion section below.

years in prison on Counts II, fifteen years on Count III, ten years on Count IV, and thirty years on Count V, to run concurrently. *Id.* at 12, 147-48. Petitioner is an inmate at the Southeastern Correctional Center. ECF No. 6, at 1.

In his direct appeal, Petitioner raised three claims: (1) that the trial court erred in allowing convictions for both armed criminal action and unlawful use of a weapon because such convictions violated Petitioner's right against double jeopardy, right to due process of law, and right to be free from cruel and unusual punishment; (2) that the trial court erred when, to remedy allegations that its bailiff had acted in an inappropriate manner to two female jurors, it dismissed the female jurors instead of removing the bailiff, because the removal violated Petitioner's rights to due process of law, equal protection, and a fair trial; and (3) that the trial court erred in overruling Petitioner's *Batson* objection to the prosecutor's peremptory strike of African-American venireperson Hagins. Resp't Ex. F, at 12-14.[2] The Missouri Court of Appeals found that Petitioner had not properly preserved the first two claims, so those claims were subject only to plain error review. Resp't Ex. B, at 5-6, 12. It conducted plain error review of the first claim and found no plain error, and it declined to conduct plain error review of the second claim. *Id.* at 5-14. It denied the third claim on the merits. *Id.* at 14-17.

In his amended motion for post-conviction relief, filed pursuant to Mo. Sup. Ct. R. 29.15, Petitioner asserted the following claims: that his trial counsel was ineffective for promising in her opening statement that a witness would testify and then failing to call her, for failing to call that witness, for failing to call Petitioner's alibi witnesses at trial, and for failing to advise Petitioner that he had a right to testify at his trial against the advice of counsel; and that his appellate counsel

---

[2] This document contains multiple sets of page numbers. The Court refers to the pagination in the lower right-hand corner.

3

was ineffective for failing to raise on appeal an allegedly erroneous verdict director for first degree murder. Resp't Ex. J, at 2-3. The motion court denied all of these claims after an evidentiary hearing. *Id.* at 8-e

In the instant *pro se* petition, as amended, Petitioner asserts five grounds for relief: (1) that the trial court violated Petitioner's right to be free from double jeopardy when it allowed convictions for both armed criminal action and unlawful use of a weapon; (2) that the trial court violated Petitioner's right to due process and a fair trial when it dismissed two female jurors from the venire panel; (3) that the trial court erred in overruling his *Batson* objections to the peremptory strike of an African-American juror from the venire panel; (4) that Petitioner received ineffective assistance of appellate counsel based on failure to raise an instructional error on direct appeal; and (5) that Petitioner received ineffective assistance of post-conviction counsel. Amd. Pet'n, ECF No. 6.

## II. LEGAL STANDARDS

### A. Legal Standard for Reviewing Claims on the Merits

Where a claim has been adjudicated on the merits in state court proceedings, a federal court may grant habeas relief only if the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).

4

A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted).

### B.  Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for

5

the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).

### III. DISCUSSION

#### A. Procedurally Defaulted Claims (Grounds One and Two)

In Ground One, Petitioner argues that that the trial court erred when it allowed convictions for both armed criminal action and unlawful use of a weapon based on the same course of conduct, thereby violating Petitioner's right to be free from double jeopardy under the Fifth Amendment. In Ground Two, Petitioner alleges that that the trial court erred when it dismissed two female jurors from the venire panel, thereby violating Petitioner's right to due process and a fair trial. Petitioner did not raise the double jeopardy issue or the issue of the dismissal of the female venire panel members at the trial court level, either through a contemporaneous objection or in his motion for a new trial. Resp't Ex. A, at 130-35;[3] Resp't Ex. G, at 215-17, 304-05. When Petitioner raised these claims on direct appeal, the Missouri Court of Appeals noted that, as Petitioner conceded, these issues had not been preserved for appellate review because had he failed to raise them at the trial court level. Resp't Ex. B, at 6, 12. The Missouri Court of Appeals conducted a discretionary plain error review of the claim in Ground One and declined to conduct a plain error review of the claim in Ground Two.

Respondent argues that both Ground One and Ground Two are procedurally defaulted, and the Court agrees. In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). *See also Kirk v. State*, 520 S.W.3d 443, 457 (Mo.

---

[3] This document contains multiple sets of page numbers. The Court refers to the pagination in the lower right-hand corner.

6

2017) ("[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings.") (quoting *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. 2012)). Relying on these principles, the Missouri Court of Appeals found these claims had not been preserved and thus were subject only to plain error review. Although the court conducted a discretionary plain error review of the claim in Ground One, that did not cure the procedural default; a federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015). Because Petitioner failed to preserve these claims under Missouri law, and because the Missouri Court of Appeals' discretionary plain-error review of Ground One does not cure the procedural default of that claim, the Court finds that Grounds One and Two have been procedurally defaulted. *See, e.g.*, *Coleman v. Redington,* No. 4:18-CV-1750 RLW, 2022 WL 225656, at *5 (E.D. Mo. Jan. 26, 2022) (finding double jeopardy claim was procedurally defaulted where the petitioner did not raise it at the trial court level but raised it on direct appeal, where the state court of appeals reviewed it for plain error only); *Clayton v. Steele*, No. 4:14CV1878 RLW, 2018 WL 1382401, at *8 (E.D. Mo. Mar. 16, 2018) (failure to raise issue of improper striking of a juror constitutes procedural default even where the state court conducted discretionary plain-error review of the unpreserved claim).

Petitioner does attempt to demonstrate cause and prejudice to excuse the procedural default of these claims, nor does he argue that failure to address these claims would result in a fundamental miscarriage of justice. Thus, the Court finds that Grounds One and Two must be denied.

7

### B. Other Claims (Grounds Three, Four, and Five)

*1. Ground Three: Trial Court Error in Overruling* Batson *Objection to Peremptory Strike of African-American Juror*

In Ground Three, Petitioner asserts that that the trial court erred in overruling his objection, under *Batson v. Kentucky,* 476 U.S. 79 (1985), to the prosecutor's peremptory strike of an African-American juror from the venire panel. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits.

"*Batson* established that 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'" *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting *Batson*, 476 U.S. at 89). "Under *Batson*, a trial court must engage in a three-step inquiry." *Smulls v. Roper,* 535 F.3d 853, 859 (8th Cir. 2008). First, the trial court "determines whether the defendant has made a prima facie showing that a prosecutor's peremptory strike was based on race." *Id.* (citing *Rice v. Collins*, 546 U.S. 333, 338 (2006)). Second, "[i]f the defendant satisfies the first step, the burden then shifts to the prosecutor to present a race-neutral explanation for striking the juror." *Id.* "The prosecutor's stated reason need not be 'persuasive, or even plausible' as long as it is not inherently discriminatory." *Id*. (quoting *Rice*, 546 U.S. at 338). Third, the trial court must decide whether the defendant has "shoulder[ed] his ultimate burden of establishing purposeful discrimination," which involves "evaluating 'the persuasiveness of the justification proffered by the prosecutor.'" *Id.* (quoting *Rice*, 546 U.S. at 338). Because the trial judge's findings in a *Batson* inquiry "largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98 n. 21. "[D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008).

8

"[E]ach of the three steps of the *Batson* inquiry involves a determination of fact." *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). For purposes of habeas review, the Court "presumes that the Missouri courts found the facts correctly, unless [the petitioner] rebuts that presumption with clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

Here, Petitioner's trial counsel challenged the prosecutor's peremptory strike of Juror 518, an African-American male and the only African-American male left on the panel. Resp't Ex. G at 316. Trial counsel argued that the strike was an improper attempt to exclude Juror 518 on the basis of his race. *Id.* The trial court then asked the prosecutor to state the race-neutral reason for the strike. *Id.* The prosecutor stated that when Juror 518 "was called upon his answers were curt," his "facial expression was completely disinterested and sort of unresponsive," and he "mumbled his first few answers until he was instructed to speak up, and that generally makes me nervous." *Id.* The prosecutor further stated that a white female juror, "Katherine O'Connell," was stricken for giving "similar sort of responses" and seeming "generally disinterested during most of jury selection." *Id.* at 317.[4] Defense counsel argued that this reason was pretextual. *Id.* She stated, "I don't believe that the record supports the state's explanations especially for the demeanor explanation. I didn't see it, and the state didn't inject it into the record or question the juror about it." *Id.* Defense counsel argued that he responded to questions and did not say anything that would make him a bad juror for the state. *Id.* at 317-18. Defense counsel also argued that there were white

---

[4] Respondent argues, and the Court agrees, that it appears that the reference to Ms. "O'Connell" was a mistake and that the trial court intended to refer to another juror, Ms. O'Donnell. Ms. *O'Connell* was not struck by the prosecutor, but rather by the trial court on its own motion after she filed a complaint against the bailiff. *Id.* at 216, 304. Ms. O'Connell also did not give short or one-word answers, but rather asked a hypothetical question to the trial judge and engaged in a back-and-forth discussion. *Id.* at 131-32. On the other hand, Ms. *O'Donnell* (also spelled "ODonnell" in the transcript) did give mostly one-word or very short answers during voir dire, and she was struck by the prosecutor. *Id.* at 130, 274-75, 315.

9

males who also gave short answers and who were not struck, citing to one in particular. *Id.* The trial court denied the *Batson* challenge, stating, "I will agree with the state, insofar as the description of his demeanor and his answers. I also would agree that the white female who was struck was similar. I did note that she, once brought to my attention by the state, that she gave similar types of answers to these questions, and so I don't find this to be pretextual." *Id.* at 318-19.

In his direct appeal, Petitioner argued that the trial court erred in denying the *Batson* challenge. In assessing this claim, the Missouri Court of Appeals set out the three-step inquiry described above. Resp't Ex. B, at 15.  It also stated that it would defer to the trial court's factual findings and credibility determinations and would overturn the trial court's finding of no purposeful discrimination only if it was clearly erroneous. *Id.* at 14-15. It found no such error, stating:

> The inattentiveness of a potential juror may be a valid race-neutral reason for using a peremptory challenge. *State v. White*, 913 S.W.2d 435, 437 (Mo. App. E.D. 1996). Thus, this point turns on whether it was clearly erroneous for the trial court to find that prosecutor's explanation was plausible in light of all the facts and circumstances. *Parker*, 836 S.W.2d at 939.
> Where the attentiveness of a juror is at issue, the most important facts and circumstances for determining the plausibility of the state's explanation are the demeanor of the venireperson who was challenged, and the demeanor and credibility of the prosecutor. *See State v. Broom*, 281 S.W.3d 353, 358 (Mo. App. E.D. 2009). This Court gives considerable deference to the trial court's ruling on a *Batson* challenge because the determination is largely based on an analysis of credibility and demeanor, issues of fact that the trial court is better situated to consider. *State v. Burnett*, No. ED102459, 2016 Mo. App. LEXIS 630, at *22 (Ct. App. June 21, 2016) (citing *Carter*, 415 S.W.3d at 689); *see also Broom*, 281 S.W.3d at 358 (demeanor "cannot be gleaned from a transcript. . . . trial court was in the best position to determine if the prosecutor accurately described the venireperson's demeanor, and we defer to its determination of this issue").
>  From the cold record before us, it is impossible to determine the demeanor of Juror #518 and whether he did in fact appear inattentive. The trial court found that he was, and there is no basis in the record for concluding that that factual finding was clearly erroneous. The record demonstrates that his answers to questions during voir dire were short, often a single word. However, an additional

10

> basis for the prosecutor's determination that he was inattentive was his facial expressions which were "disinterested and sort of unresponsive." Facial expressions, which are illustrative of a person's demeanor, are impossible to ascertain from a written record.
>
> Likewise, the transcript provides no basis for reexamining the demeanor and credibility of the prosecutor. The trial court was in a better position to determine the prosecutor's demeanor while explaining the reason for striking this potential juror. *See Werner*, 9 S.W.3d at 595 (reviewing court defers to trial court on credibility determinations). The court found this explanation was not a pretext for discrimination, and there is no basis in the record for finding that the trial court clearly erred in reaching this conclusion.

*Id.* at 16-17.

The Missouri Court of Appeals' assessment of this claim was not contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts in light of the evidence presented. The Missouri Court of Appeals properly articulated the applicable *Batson* standard and reasonably deferred to the trial court's determination that the prosecutor's race-neutral explanation for striking the juror (his inattentiveness and disinterest) was persuasive, and not pretextual, based on the trial court's own observations of the juror's demeanor and answers. *See* Resp't Ex. B, at 16-17; Resp't Ex. G, at 316-19; *Thaler v. Haynes*, 559 U.S. 43, 49 (2010) ("[W]hen the explanation for a peremptory challenge 'invoke[s] a juror's demeanor,' the trial judge's 'firsthand observations' are of great importance.") (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). *See also United States v. Warren*, 788 F.3d 805, 813 (8th Cir. 2015) (noting that passivity, inattentiveness, confusion, and silence are common race neutral reasons for striking jurors). The Missouri Court of Appeals also reasonably noted that the record shows that the juror's answers to questions during voir dire were short, often a single word, further supporting the prosecutor's assertion that the juror was stricken for being disinterested or unresponsive. *See* Resp't Ex. B, at 17; Resp't Ex. G, at 133, 278-79. Petitioner offers no clear and convincing evidence to rebut the presumption of the

11

correctness of any of these findings. Because the Missouri Court of Appeals' decision is supported by the record and is not contrary to or an unreasonable application of federal law, this claim will be denied.

## 2. Ground Four: Ineffective Assistance of Appellate Counsel

In Ground 4, Petitioner asserts that his appellate counsel was ineffective for failing to raise on direct appeal the claim that Instruction No. 5, the verdict director for first-degree murder, was erroneous. This claim was raised in state court and denied on the merits.

At trial, Petitioner's counsel objected to Instruction No. 5, the verdict director for first degree murder,[5] arguing that there was insufficient evidence to support the instruction. Resp't Ex. G, at 591.[6] The trial court overruled the objection and later submitted Instruction No. 5 to the jury.

---

[5] Instruction No. 5 stated: in relevant part:
  As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

  First, that on or about July 31, 2012, in the City of St. Louis, State of Missouri, the defendant or another caused the death of Aniya Cook by shooting her, and

  Second, that defendant or another knew or was aware that his conduct was practically certain to cause the death of Aniya Cook or Anthony Bobo, or that it was the defendant's purpose to cause the death of Aniya Cook or Anthony Bobo, and

  Third, that defendant or another did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt;

  Fourth, that with the purpose of promoting or furthering the commission of that murder in the first degree, the defendant acted alone or together with or aided other persons in committing the offense,

  Then you will find the defendant guilty under Count I of murder in the first degree.
Resp't Ex. A, at 89-90.

[6] Trial counsel stated, "Judge, I would object to jury Instruction Number 5 regarding murder in the first-degree. I don't believe there was any evidence presented that Richard made any statements showing that he was acting with any of the individuals whether charged or uncharged in this case. I also don't believe there has been any evidence that once it became apparent that somebody was

12

*Id.* at 592. As Respondent concedes, Instruction No. 5 was erroneous because it did not specifically ascribe the element of deliberation to Petitioner, but instead to Petitioner "or another." *See* Resp. to Show Cause, ECF No.16, at 35-37 (citing MAI-CR 3d 304.04 n. 5(d) & 7(b)). Petitioner's appellate counsel did not raise this error in Petitioner's direct appeal; instead, she raised three other issues.

In his amended motion for post-conviction relief, Petitioner asserted that his appellate counsel was ineffective for failing to raise this error on appeal. At the hearing held by the motion court, appellate counsel testified that in reviewing Petitioner's case, to decide which points to raise, she "tried to find the ones that [she] thought had the best chance." Resp't Ex. I, at 11. She testified that she reviewed the jury instructions and that she noticed that the verdict directing instructions for murder in the first degree did not specifically ascribe the element of deliberation to the defendant alone. *Id.* at 11-12. She testified that she believed the instruction incorrectly used the disjunctive "or," which she believed to be erroneous based on case law and the Missouri Approved Instructions. *Id.* 12-13. Asked why she did not raise this issue on appeal, she testified that her understanding was that to find prejudice from a disjunctive error like this, there would need to be some showing that the individual might not have been the actual shooter; otherwise, there would be no prejudice found. *Id.* at 14. She did not think, based on the facts of the case, that there was a real argument against the deliberation prong. *Id.* at 16. In her experience as appellate counsel, she felt that the points she raised would better serve her client than raising this particular issue, though it was a "very hard call" because she did not think any of the claims were incredibly strong. *Id.* at 24.

---

going to be killed that he then participated in that act. I don't believe that it rises to the level of deliberation based upon the evidence." Resp't Ex. G, at 591.

13

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This right applies through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). To show ineffective assistance of counsel, a petitioner must show both that his "counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In affirming the motion court's denial of this claim, the Missouri Court of Appeals properly recognized the applicable two-prong standard established in *Strickland*.[7] Resp't Ex. E, at 4. The state court first noted that appellate counsel may use her professional judgment to concentrate on the most important issues and is not ineffective for failing to assert every non-frivolous claim on appeal. *Id.* at 8. It found that Petitioner's appellate counsel had made a strategic decision not to raise this claim, which it presumed was a result of counsel's reasonable professional judgment. *Id*. Second, the court noted that generally, appellate counsel is not deemed ineffective for failing to raise an unpreserved claim of error on appeal, and that had appellate counsel raised this claim on appeal, it could only have been reviewed for plain error because Petitioner's trial counsel did not object to the instruction on the ground that it was erroneous but only based on a lack of evidence to support it. *Id.* at 8-9. Finally, the court found that even if appellate counsel had raised the plain error claim on appeal, Petitioner could not show that such a claim would have had merit. *Id.* at 9-10. Analyzing Missouri cases, the court found that where a defendant does not contest the issue of deliberation at trial but rather denies participating in the crime at all, there is no plain error in giving an erroneous instruction that does not personally ascribe the element of deliberation to the defendant. *Id.* (citing *State v. McFarland*, 259 S.W.3d 621 (Mo. App. S.D. 2008), & *State v. Busch*, 920 S.W.2d 565 (Mo. App. E.D. 1996)). The court found that here, as in those cases, Petitioner's defense was that he did not participate in the murder at all. *Id*. Specifically, it noted that during closing argument, defense counsel implied Petitioner was not involved in the shooting because Bobo was not a credible witness, there was "sloppy police work," and because Moore (who was a credible witness) did not identify Petitioner at the scene of the crime but instead identified a

---

[7] The Missouri Court of Appeals did not specifically cite *Strickland*, but it cited a Missouri Supreme Court case citing *Strickland* and applying the *Strickland* standard. *See* Resp't Ex. E, at 4 (citing *Shockley v. State*, 579 S.W.3d 881, 892-93, 919 (Mo. 2019)).

15

different individual as the person who shot towards her car. *Id.* at 9-10. The court found that appellate counsel was not ineffective for failing to raise a meritless claim. *Id.* at 10. It concluded that Petitioner had not established either the deficient performance prong or the prejudice prong of *Strickland*. *Id.*

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts. The state court reasonably found Petitioner could not establish the first prong of *Strickland* (deficient performance) because counsel made a reasonable strategic decision to pursue on appeal claims other than this one. That conclusion is supported by Petitioner's appellate counsel's testimony at the evidentiary hearing, which indicates that she considered asserting this claim but chose not to because she believed it was unlikely to succeed and that Petitioner would be better served by asserting different claims. The Missouri Court of Appeals' conclusion is also consistent with federal law. *See, e.g.*, *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) ("When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (internal quotation marks omitted). *See also Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The Court finds nothing in the record to suggest that this

claim was clearly stronger than those appellate counsel chose to present, particularly in light of the state court's finding that this error had not been preserved and would have been subject only to plain-error review.

The state court also reasonably found that Petitioner could not establish the prejudice prong of *Strickland* (a reasonable probability that, absent counsel's error, the outcome of the proceeding would have been different). The state court, relying on state law, reasonably found that had appellate counsel raised this claim of instructional error on appeal, it would have been found to be without merit. It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold v. Dormire,* 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."). Additionally, the state court's conclusion had factual support in the record—the statements made by defense counsel in closing argument suggesting that Petitioner was not involved in the murder at all. *See* Resp't Ex. G, at 616-34. Petitioner offers no clear and convincing evidence to rebut the presumption of the correctness of the state court's factual findings.

For all of the above reasons, Ground Four will be denied.

### 3.  Ground Five: Ineffective Assistance of Post-Conviction Counsel

In Ground Five, Petitioner asserts that his post-conviction counsel was ineffective. This claim is not cognizable in a federal habeas proceeding. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254."). *See also Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) ("There is no federal constitutional right to post-conviction counsel."); *Roberts v. Stange*, No. 1:17-CV-214 JAR, 2023 WL 2734228, at *5

(E.D. Mo. Mar. 31, 2023) ("Petitioner's independent claims of ineffective assistance of post-conviction counsel are not cognizable in a federal habeas petition.").[8]

Because Ground Five is not cognizable in this proceeding, it will be denied.

### IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 6) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

---

[8] Ineffective assistance of post-conviction relief counsel may be asserted as "cause" to excuse the procedural default of an ineffective assistance of trial counsel claim. *See Martinez v. Ryan*, 566 U.S. 1 (2012). In this case, however, Petitioner does not assert any defaulted claims whose default might be excused by ineffective assistance of post-conviction counsel.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2025.